UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD BURMEISTER,<br><br>Plaintiff,<br><br>v.<br><br>ALAN SALDICH, et al.,<br><br>Defendants. | Case No. 22-cv-00088-HSG<br><br>**ORDER GRANTING MOTION TO STRIKE**<br><br>Re: Dkt. No. 18 |

Before the Court is Defendants' motion to strike, or in the alternative, to dismiss. *See* Dkt. No. 18 ("Mot."). The Court previously found this matter appropriate for disposition without oral argument and took the motion under submission. *See* Dkt. No. 29; Civil L.R. 7-1(b). The Court **GRANTS** the motion to strike for the reasons below.

**I.   BACKGROUND**

This defamation case is about a LinkedIn post in which Defendant Alan Saldich wrote that Plaintiff Chad Burmeister had "participated in the seditious takeover" of the Capitol on January 6, 2021. *See* Dkt. No. 1 ("Compl."). Plaintiff alleges that on January 7, 2021, Saldich, acting in his capacity as Chief Marketing Officer of Corelight, published the following:

> Normally I'd stay away from political commentary on LinkedIn, but today I'd like to highlight the actions of a former colleague, Chad Burmeister . . . from Littleton, CO who participated in the seditious takeover of the capitol on Wednesday. I have severed my connection with him here, and encourage all who are connected with him to do the same. It's disgraceful. If you want to watch the video, it's part of this . . . .

*Id.* ¶ 10. Saldich included a link to an article featuring a video segment of *Next with Kyle Clark* ("Clark Report") from local news station 9News. *Id.* ¶ 17. The article had an image of Plaintiff and a caption stating "Coloradan who claims to storm the [Capitol] building heads home." *Id.* In

the video, 9News anchor Kyle Clark states that Plaintiff bragged about being the "First guy to storm the capital [sic] today" in a selfie posted on Facebook, later changed to "Peaceful march to the capital [sic]." *See id.* ¶¶ 17–18. A screenshot of the Facebook post appeared on the face of Saldich's LinkedIn post and in the video segment:



*See id.* ¶10; Dkt. No. 18-1 ("Russell Decl."), Ex. 7.[1] The video highlighted several other social media posts by Plaintiff, including "Pray for all who make their way to DC this week. Assuming much of these leaks are true, things could get ugly this week," "We will vote with our voices and ultimately guns," "A storm is coming," and "Rebellion is brewing." Russell Decl, Exs. 1–6.

Plaintiff alleges that Saldich's statements in the LinkedIn post were materially false and that Saldich republished materially false statements by linking to the Clark Report. Compl. ¶¶ 15, 22. Plaintiff states he "did not participate in the seditious takeover" of the Capitol because although he was at the Stop the Steal Rally, he never entered the Capitol Building, never claimed

---

[1] Defendants request judicial notice of certain materials. *See* Dkt. No. 18-2. The Court finds that the Clark Report video, available at https://www.9news.com/video/news/local/next/colorado-lawmaker-conspiracy-theory-antifa-capitol-trump-supporter-republican-baisley/73-7fc07f1e-608c-4aba-9552-876c8752d9e3, was incorporated by reference into Plaintiff's complaint. The Court will consider the video, transcript, and screenshots, as Plaintiff does not contest their authenticity. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court will also consider documents in Plaintiff's other defamation cases to the extent necessary to address Defendants' preclusion arguments. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002). The request to consider the Senate report is denied as irrelevant to the Court's resolution of the motions.

that he did, and was never investigated by law enforcement. *Id.* ¶¶ 15–16, 18–19; Dkt. No. 23 ("Opp.") at 18. Rather, Plaintiff alleges he only posted a photo with another individual at the rally who claimed to be the "first guy to storm the capital [sic]." Compl. ¶ 19.

Plaintiff alleges that the LinkedIn post damaged his reputation and career as a business owner, including causing a colleague to cancel a $250,000 order with Plaintiff's company. *Id.* ¶¶ 1, 7, 14, 25. He alleges that hundreds of users read the post and left "almost universally negative" comments, and that he has received anonymous death threats. *Id.* ¶¶ 13, 25. Based on these allegations, Plaintiff brings state law claims for libel, trade libel, and false light invasion of privacy. *Id.* ¶¶ 26–47.

This is not Plaintiff's only case related to the Clark Report. *See* Russell Decl., Exs. 8–11. In 2022, a Colorado state court dismissed with prejudice Plaintiff's claims against Clark and Tegna, the owner of 9News, under Colorado's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute. *Id.*, Ex. 9, *Burmeister v. Clark*, No. 2021CV33715. The court found that the statements in the video that Plaintiff "claimed" to have entered the Capitol building, "bragged" or "boasted" about his involvement in the January 6 events, and had a Facebook "full of" posts referencing QAnon conspiracies were not materially false. *See id.* at 6–15.

## II.  LEGAL STANDARD

### A.  Motion to Strike

Under California's anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. P. Code § 425.16(b)(1). The statute was enacted to curtail "strategic lawsuits against public participation" that were "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." *Id.* § 425.16(a). Because "it is in the public interest to encourage continued participation in matters of public significance, and [] this participation should not be chilled through abuse of the judicial process," the statute is to be construed broadly. *Id.*

3

California courts apply a two-step process for analyzing an anti-SLAPP motion. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). Under the first prong, the moving party must make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002) (quoting Cal. Civ. P. Code § 425.16(b)(1)). If the moving party meets its threshold showing, then the burden shifts to the non-moving party to show a probability of prevailing on the claim. *See id.*

A defendant's anti-SLAPP motion should be granted "when a plaintiff presents an insufficient legal basis for his or her claims *or* when no sufficiently substantial evidence exists to support a judgment for him or her." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). Where, as here, an anti-SLAPP motion challenges only the legal sufficiency of a claim, as opposed to factual sufficiency, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. *Id.* at 834.

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Id.* However, a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The Court does not credit allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

4

### III. DISCUSSION

Plaintiff does not contest that Saldich's statements were made in a public forum and are related to a topic of public interest, satisfying the first prong of the anti-SLAPP analysis. *See* Opp. Thus, the analysis here is based only on the second prong: whether Plaintiff has established a probability of prevailing.[2] The Court finds that Plaintiff has not.

#### A. Defamation

Defendants argue that Plaintiff's defamation claims fail because the statements in the LinkedIn post are not materially false, consist of opinion, and were not made with actual malice. *See* Mot. at 17–21. Defendants also argue that claims related to the Clark Report are barred by issue preclusion and that linking to the report did not constitute republication. *Id.* at 11–16.

##### i. Choice of Law

As an initial matter, Defendants argue that Colorado law applies to Plaintiff's defamation claims. *See id.* at 21–22, 23 n.9. The Court will apply California law. As the party invoking another state's law, Defendants have failed to demonstrate that the defamation laws of Colorado are materially different than those of California. *See Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1076 (S.D. Cal. 2021) (applying California defamation law where party had not "carried his burden of identifying an actual conflict between the laws of California and Florida"). Defendants argue that Colorado does not recognize false light invasion of privacy, but do not address how *defamation* law materially differs.[3]

##### ii. Legal Standard

To state a claim for defamation under California law, a plaintiff must allege "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural

---

[2] Plaintiff submitted a declaration with his opposition. Dkt. No. 23-1. Defendants seek to strike the declaration in its entirety, *see* Dkt. No. 24-1, but did not adhere to the local rules in submitting evidentiary objections, *see* Civil L.R. 7-3(c). Still, the Court will not consider the declaration. Defendants challenge only the Complaint's legal sufficiency, so Plaintiff "cannot convert [Defendants'] motion to strike into a motion for summary judgment" by submitting evidence. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021).

[3] Moreover, because the false light claim is "essentially superfluous, and stands or falls on whether it meets the same requirement as the defamation cause of action," the Court need not address this issue. *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1264 (2017).

5

tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). A false publication is one that expresses provable facts, not merely opinions. *See Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 604 (1976). "Defamation is effected by either . . . libel [or] slander." Cal. Civ. Code § 44. "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation . . . , which exposes any person to hatred, contempt, ridicule, or obloquy, . . . or which has a tendency to injure him in his occupation." *Id.* § 45. "Slander is a false and unprivileged publication, orally uttered, . . . which," among other things, "[t]ends directly to injure [a person] in respect to his office, profession, trade or business." *Id.* § 46. Courts view an alleged defamatory statement from the perspective of an average reader, in context and given the totality of the circumstances. *Hawran v. Hixson*, 209 Cal. App. 4th 256, 289–90, 293 (2012).

### iii. Falsity

"The *sine qua non* of recovery for defamation . . . is the existence of falsehood." *Reed v. Gallagher*, 248 Cal. App. 4th 841, 855 (2016) (citation omitted). Where a statement involves a matter of public concern, as here, the plaintiff must plead and prove that the challenged statement is false. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *see also Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST, 2019 WL 281370, at *5 (N.D. Cal. Jan. 22, 2019). "A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014) (citation omitted). Thus, defamation does not look to the "literal truth of each word or detail," but rather "whether the 'gist or sting' of the statement is true or false, benign or defamatory, in substance." *Issa v. Applegate*, 31 Cal. App. 5th 689, 702, 708 (2019) (citation omitted); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" (citation omitted)).

#### a. Saldich's LinkedIn Post

Beginning with Saldich's LinkedIn post itself, the only factual statement in the post is that Plaintiff "participated in the seditious takeover of the capitol on Wednesday." *See* Compl. ¶ 10.

Plaintiff argues that the statement is false because Plaintiff did not enter the Capitol Building and was not investigated by law enforcement, and thus did not "participate" in crimes on January 6, 2021. *See id.* ¶¶ 15–16; Opp. at 9–10.

To an average reader considering the statement in the context of the totality of the circumstances, Saldich's statement that Plaintiff "participated" in the takeover is substantially true. "Participated" means, by dictionary definition, "to take part" or "to have a part or share in something." *Participate*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/participate. The truth, by Plaintiff's own admission, is that he attended the Stop the Steal Rally and publicly posted a photograph on Facebook with someone who claimed to be the "[f]irst guy to storm the capital [sic] today." *See* Compl. ¶¶ 18–20; Opp. at 18. In the days leading up to January 6, he also publicly posted several references to a coming "rebellion" and "storm." *See* Russell Decl. Exs. 2–6. In context, the statement that he "participated" is a reasonable interpretation, whether or not Saldich's post was technically accurate semantically. Contrary to Plaintiff's assertion, Saldich did not accuse him of entering the Capitol Building or of being investigated for crimes. In fact, the Clark Report itself, which prompted Saldich's post, includes Plaintiff's statements that he did not enter the Capitol and did not break any laws. *See id.* Ex. 1.

At bottom, Plaintiff's case is based on what amounts to an alleged misinterpretation of his own Facebook post: that it was not *him* who stormed the Capitol. *See* Compl. ¶ 19. That Plaintiff's own social media post did not make this entirely clear, or did not explain what he meant by "storm," is not grounds for a defamation suit. And even if interpreted correctly, his post could still reasonably be understood to mean, at minimum, that Plaintiff was proud to show the public that he was with the "[f]irst guy to storm the [Capitol]."

In short, the Court finds that the "sting" or "gist" of Saldich's challenged statement was justifiable as substantially true. *See Masson*, 501 U.S. at 517.

**b. The Clark Report**

All of Plaintiffs' remaining allegations of falsity regard statements in the article featuring the Clark Report and the video itself. *See* Compl. ¶¶ 17–19. This includes the subheading that

1   Plaintiff "claimed" to storm the Capitol building and statements in the video that he bragged about

2   it. *See id.* Because the Colorado court already found that these statements are substantially true,

3   the Court finds that the doctrine of issue preclusion bars Plaintiff from pursuing his claims related

4   to the Clark Report. *See* Russell Decl., Ex. 9 at 7–11.

5         Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and

6   resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in

7   the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted).

8   The Court "determine[s] the preclusive effect of a state court judgment by applying that state's

9   preclusion principles." *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754,

10  760 (9th Cir. 2014). Under Colorado law, issue preclusion bars litigation of an issue in a second

11  proceeding if:

> (1) the prior proceeding was decided on a final judgment on the merits; (2) the issue in the current proceeding is identical to the issue actually adjudicated in a prior proceeding; (3) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the party against whom issue preclusion is asserted is a party or in privity with a party in the prior proceeding.

16  *Foster v. Plock*, 394 P.3d 1119, 1123 (Colo. 2017).

17        All four factors are satisfied here. First, the Colorado state court's decision granting the

18  anti-SLAPP motion and dismissing Plaintiff's case with prejudice constitutes a final judgment.

19  *See Adams v. Trimble*, No. CIV S-11-01360-KJM, 2012 WL 260160, at *7 (E.D. Cal. Jan. 27,

20  2012). Second, the issue of whether the statements in the Clark Report and subheading are

21  substantially true was adjudicated in the Colorado action. *See* Russell Decl., Ex. 9. Third,

22  Burmeister was the plaintiff in the Colorado action and had a full and fair opportunity to litigate

23  the issue there, having filed an opposition and argued at a hearing. *See id.* at 1. Finally,

24  Burmeister is the party against whom issue preclusion is asserted and was a party in the prior

25  proceeding.[4] Because the Colorado court has already determined that the statements in the Clark

---

[4] Plaintiff responds to Defendants' issue preclusion argument only in a footnote. *See* Dkt. No. 23 at 24 n.9. Plaintiff argues that issue preclusion does not apply because this case does not involve the same parties, but cites only to cases about *claim* preclusion. *See Foster*, 394 P.3d at 1123–24 (explaining that Colorado courts abandoned the mutuality of parties requirement for defensive

8

1    report are substantially true, Plaintiff may not relitigate that issue here.  Plaintiff's allegations

2    based on Saldich linking to the article featuring the Clark Report cannot stand.[5]

### B.     False Light, Trade Libel, and Employer Liability

Plaintiffs remaining claims are based on the same statements as his defamation claim and thus also fail.  *See Jackson*, 10 Cal. App. 5th at 1264 (a false light claim "stands or falls on whether it meets the same requirements as the defamation cause of action"); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 34 (Cal. Ct. App. 2007) (finding "collapse" of defamation claim for lack of falsity "spells the demise of all other causes of action" arising from the same defamatory publication).  Plaintiff's trade libel claim also fails because there is no allegation that Defendants made any false statement about the quality of Plaintiff's services or products.  *See nSight, Inc. v. PeopleSoft, Inc.*, 296 F. App'x 555, 560 (9th Cir. 2008); *Mann v. Quality Old Time Service, Inc.*, 139 Cal. App. 4th 328, 340 (2006) ("Whereas defamation concerns injury to the reputation of a person or business, trade libel involves false disparagement of the quality of goods or services."). Finally, Plaintiff's claim against Corelight is based only on Saldich's post and thus fails as well.

In sum, because Plaintiff's claims have an insufficient legal basis, the Court **GRANTS** the motion to strike.  The Court also finds that leave to amend would be futile, as the Court's legal findings are based on Plaintiff's own admissions in the complaint.  *See Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("[A] plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim."); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

//

//

//

---

issue preclusion but maintaining the requirement for defensive *claim* preclusion).

[5] Because the Court finds that the challenged statement in Saldich's LinkedIn post is substantially true and that claims related to republication of the Clark Report are barred based on issue preclusion, the Court does not reach Defendants' remaining arguments.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motion to strike. Dkt. No. 18. The Complaint is **STRICKEN** and the case is **DISMISSED** with prejudice. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff. After the entry of judgment, Defendants may file a motion for attorneys' fees and costs, which will be referred to a magistrate judge for resolution.

**IT IS SO ORDERED.**

Dated: 1/18/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge